Council, whenever you're ready, make your seat. Good morning, Your Honors. May I please the Court, Council? Brett Wagner on behalf of the people of the State of Illinois. Your Honors, this Court should reverse the circuit court order and dissolve the preliminary injunction as a result of the straightforward application of well-settled Illinois procedural and constitutional law. The first straightforward principle is the fundamental importance of the appropriations clause in the Illinois Constitution. In Article 8, Section 2b, the Illinois Constitution provides that the General Assembly, by law, shall make appropriations for all expenditures of public funds by the State. The Illinois Constitution has had an appropriations clause in a similar form, but one form or another, since its first charter in 1818. Prior to that, the Federal Constitution had, still has, an appropriations clause. With regard to the Federal appropriations clause, which operates in the same manner as the Illinois appropriations clause, the founders of the country, James Madison in the Federalist Papers, and subsequently Justice Story in his constitutional commentaries, commented on the importance of the appropriations clause to the functioning of a constitutional form of government. The appropriations clause, they said, is a check, a legislative check, on government fraud and corruption and executive extravagance. Much more recently, Justice Kennedy in the U.S. Supreme Court discussed the importance of the appropriations clause, explaining that the appropriations clause is necessary to make sure that public funds are expended on the basis of conscientious legislative judgment and policy. The appropriations clause is a foundational element of our state government and needs to be given effect. The second straightforward principle of Illinois law at issue in this case is that a preliminary injunction is an extraordinary remedy. To be entitled to a preliminary injunction, a movement, the plaintiffs here, must meet the under facial case. They must meet every element of the preliminary injunction test. Other elements cannot substitute for a lack of one element. And one such element, the element principally at issue in this appeal, is the need for a likelihood of success on the merits. If there's no likelihood of success on the merits of the legal claim supporting the injunction, the injunction may not issue. Let's cut to the chase. Why do you say there's no likelihood of success on the merits? Absolutely, Your Honor. The complaint and injunction motions frame the issue before the court, and the one legal theory that supported the injunction was the claim that for an unconstitutional impairment of contract. The claim that the general assembly's failure to enact appropriations legislation sufficient to pay what the plaintiffs were owed under their court department means was an impairment of contract. Since the original temporary restraining order, the preliminary injunction, entered, the Illinois Supreme Court clarified in the Assembly Supreme Court case that the failure to appropriate money is not and cannot be an impairment of contract in violation of the Illinois Constitution. So, cutting to the chase, the Illinois Supreme Court expressed widely rejected the only legal claim upon which the preliminary injunction was filed in. Well, I suggest that you're giving this case a lot broader, the Supreme Court case, a lot broader reading that even the court itself noted and reiterated time and again in its opinion that it was only determining multi-year contracts. Sure, Your Honor. And it even went so far to say that in response, I think, to the dissent, that a CBA such as we have is not before it and they're not deciding the issue. Your Honor, I would, if you go to the narrow reading, and this is very important, the court did not say that a CBA such as we have is not an issue because the very contract that was an issue was a CBA such as we have. No, no, I'm talking about the fact that it's not a multi-year, that it's a tolling situation rather than a multi-year. Okay, Your Honor. Let me, I'll take that issue first and then kind of step back about what I believe to be the twin rationales of the past Supreme Court decision. First, with regard to the claim that we're looking at tolling agreements and not with regard to multi-year CBAs under Section 21 of the Public Waiver Relations Act. First, under the allegation of the First Amendment complaint, four unions are not under tolling agreements. They are under newly negotiated multi-year CBAs. So, that's the IFT Locals 4460 and 4717 and AFT Locals 4051 and 4407. So, for those four plaintiff unions, they have seen multi-year CBAs, so they are directly covered by even the narrow reading of the Supreme Court decision, and so the injunction must be resolved with regard to that. So, those employees of the four unions would not be paid any longer? Those, the employees of those four unions would not be covered by the injunction. There would be no injunction requiring that they be paid. That does not mean there may not be some other basis, constitutional basis to pay them. For instance, there are some appropriate enacted appropriations for the remainder of fiscal year 2017 by the partial budget. Additionally, some employees who are performing essential services may be required to go to work, and they may be allowed to be paid. But I want to stress that those issues are not part of this case. So, those issues are not before the court. But the point is that the injunction would not operate with regard to the employees of those four unions. That does not mean there may not be some other basis that requires them to be paid. And do those other basis have to be alleged now in the complaint, or can the complaint be amended? The complaint would be amended. I mean, if this Court remands the case, the complaint could be amended to allege those various causes. But this is an interlocutory point in the case. Correct. They could move to amend their complaint. We could raise issues about timing. So, you know, the amendment factors, but it is conceivable that the court could exercise this discretion to allow an interlocutory complaint. But I would also add that several of these issues, and some of these circumstances, for instance, employee fees that might be grant services that are required by federal consent decrees, or employees involved in individual operations, are already expressly covered by the orders of a different circuit court case that's already been filed in the court calendar. And so it is not so, so while they're making an attempt to amend this complaint, there will also be, you know, I think, probably practical limits of that because of this other pending action that's covered a lot of the issues as well. Have the people taken the position in those other cases that the employees should not be paid because there's no appropriation? So in the Cook County litigation specifically, where the people filed it, people have complained to that case. And the people are... Have you taken a position that they shouldn't be paid? That's just what I want to know. I'm sorry. I'm not here on that. That's a very nuanced answer. It's not a yes or no? The people have taken the position that some employees may be paid. But others not? Correct. That's absolutely right. And does that relate to what you're calling essential services? Or does that relate to the agencies that are identified under the temporary budget? In the Cook County action, that relates to employees who would be operating under continuing appropriations, who would be providing services required by consent decrees, who would be involved in judicial operations. The Cook County case involves several different classes of types of payments that still may be made or must be made in the absence of an annual and active legislative appropriation. Do you think that a consent agreement is any different than the tolling agreements we had before us? Yes, Your Honor. In very important ways. The consent decrees are judicially entered and judicially enforceable. They are judicial court orders that provide an expenditure authority with essentially a judicial imprimatur. Yeah, but the consent is not with the court. The consent is between who? The governor and unions? Well, in the consent decrees, a lot of consent decrees, for instance, will involve classes of individuals who receive, for example, services from DCFS. And so the consent decree will be between that class. So it's between DCFS and the governor? The plaintiffs. No, the plaintiffs. The plaintiffs in that case. The parties in the case enter into a consent decree. They enter into a consent and then the court approves them. Yes. That's what makes it a decree. So my question is, with the consent that's entered into between the two parties, how is that different, the consent portion, than the tolling agreements we have before us now between the governor? The consent portion is not different. The important part is that it was judicially enforceable, judicially entered and judicially enforceable. So it's the weight of the court. The court then retains jurisdiction to enforce that decree against the parties. Okay. And so now you've agreed consent decrees are the same as the tolling. Now we have a preliminary injunction that's enforcing the tolling. How is that different than a judicial imprimatur on the consent in Cook County? Okay. In very important ways. First of all, I don't agree that the consent decrees and the tolling agreements are similar in most regards. The consent decrees are very specific responses that the court has entered by the courts in response to litigation that are based on causes of action. And so a consent decree... Don't we have a cause of action here alleged? No. We don't have a valid cause of action. Oh. Well, that's your opinion. Now, I'm sure the other side would disagree. But my... How is... We have tolling agreements before us, not CBAs. Your Honor, with regard to that, with regard to... And let's go back to that. Yes. So the plaintiffs, other than the four plaintiffs, that aren't under tolling agreements. But the agencies that are under the tolling agreements. Too many points. One, the tolling agreements, by their expressed terms, by their expressed terms, state that these agreements, that all legal and contractual rights that exist on June 30th, 2015, shall remain in effect during the term of this agreement. The tolling agreements extend, explicitly extend, they don't alter. And in plaintiff's brief at June 15, they acknowledge that the purpose of the tolling agreements was to extend the rights under the CBAs. The rights under the CBAs are subject to legislative appropriation. That's explicit even in a narrow reading of the Aspen Supreme Court case. The tolling agreements do not give the parties any more rights than they otherwise have. They explicitly state that they don't. What rights did they have that existed, legal and contractual rights existed on June 30th, 2015? The right to remain subject to appropriation. Well, the Supreme Court says that the outcome could be different with cases, whether other state contracts with different provisions and different controlling law could also be subject to legislative appropriation without offending the contract clause not before us. I think they are implying that there might be a different result in different cases. Such as this, perhaps? No, I strongly disagree that it is such as this. The language there is in response to specific circumstances or examples raised by the dissent. And they're saying, well, all we're talking about today are multi-year CBAs because that's all that is before us. So we are going to read court and not say explicitly. But, again, these tolling agreements extend the same rights as the CBAs. But don't you say there's more tension between the appropriation clause and the contract clause when you have such a broad range of impact as you do with all of these unions and all the people affected by the tolling agreement? No. No. Paragraph 51 of the Esme Supreme Court case. Paragraph 51 begins, this court has similarly recognized that when labor representatives bargain with executive agencies, they do so with the knowledge that any agreement reached will be affected by the General Assembly's appropriation power. Well, that's a real broad statement. I don't think you can glean anything from that. It's a quote from the Supreme Court, Your Honor. Right. It's an acknowledgment that labor contracts, and that can certainly be read to include tolling agreements, as well as CBAs, are negotiated and entered into with the understanding that they're subject to legislative appropriation. But then the court goes on to say that this is just a feature of public sector bargaining. I mean, that's all they're really saying, as Justice Chapman indicated. It's a very broad statement. And then they follow up with the last line in the paragraph that says, when you bargain, this is a difference in the public sector. That's true. You bargain this way. So the CBAs in this case, did they all have contingencies? Did they were contingent upon the appropriation power? Yes. They all had a paragraph. They all had to because of Section 21 of the Procedure for Relation Act. How do you distinguish the fact that apparently Section 996 of the temporary budget seemed to – their intent seemed to encompass the payment of state employees? So Section 996 itself is not an appropriation for state – the payment of state employee pay. It cannot be. Section 996 simply says that, you know, the appropriation authority in this budget shall not affect the validity of any court orders, which is true. It can't because there's existing court orders. That's just a recognition of the facts on the ground. But – but both the AFSCME Supreme Court decision in paragraph 42 reaffirmed that the appropriations authority is exclusive in the general senate. Second, the only Supreme Court Burris decision that we cited, or at least Burris, says that an appropriation is the setting aside of a certain sum for a specific object. Article 996 sets aside, you know, a certain sum for a specific object. It does not meet the definition of appropriation. Could that be a factual issue that needs to be more fully developed? No. Okay, you can read the – Article 996 speaks for itself. It says Article 996 does not set aside a specific sum for a specific object, and that's what appropriation must do. So there's no facts to develop on that. In addition – Well, there are if it's relating to existing court orders, because the court orders themselves talk about payment of specific sums to specific people. The court order, so at least the court order in this case, does not set aside any specific sum. But it describes specific sums. It does not. Okay. The court order in this case, Your Honor, says that the comptroller – it was the comptroller to draw warrants such that the state employee shall be paid at their normal wages. And you don't think that that definition is a specific sum? That is correct. Well, how would the comptroller know to issue warrants for a specific amount? I mean, how would the comptroller know what to tell the treasurer to pay unless that phrase described a specific sum? No. So what that phrase is essentially, which is what the parties have been using it as, is a blank check to be drawn on unappropriated general revenue funds. Pardon me. So the employees can be paid any amount? Well, the limit is their normal wages. Exactly. So my question is, how is that court order not a specific sum? It goes back to the CBA under your argument, right? You retain the same rights that you had under the June 30th agreement. Right. Those agreements set forth specific sums. That are subject to appropriation. I understand. Okay. But there are specific sums in those contracts. So a two-part answer to kind of walk us through the process. First of all, in the U.S., how does the comptroller know how much to pay to a voucher? The agencies, the government agencies submit vouchers that are signed by the agency head or their appointment officer that say, this is our normal rate of pay for these employees for this pay period. I authorize you to pay them. And then the comptroller, based on expenditure authority, either a specific appropriation or there is no specific appropriation based on this court order, then draws that amount in that voucher based on the warrant of the submitting officer. But look at the other 995 articles of Public Act 99-0542. That sets forth specific funds. That says, for this fund, the $11,875,000, that's a specific fund. But section 996, you wouldn't expect them to list all the court cases and all of the amounts and the tolling agreements. Don't you think 996 was an effort by the legislature, perhaps, to incorporate all of those other cases that are out there? Well, I would say that, no. And the reason I say, no, is this. Again, I'm sorry for all my multi-part answers, but this is a no. First of all, with regard to certain court orders, such as consent decrees or other court orders, they are provided in this portfolio. But with regard to the preliminary injunction in this case, there is, again, there is no specific sum listed in that. Moreover, the General Assembly cannot, and this is the Ogilvie case, and this is the next part I was getting to earlier. In the Ogilvie case, the General Assembly cannot delegate its appropriation power. So in other words, and that court was very clear that only the General Assembly is allowed to specify the specific sums for appropriation purposes. Even if the General Assembly intended to somehow incorporate the St. Clair County order to this case, it cannot do so because it leaves open the amount of money to be spent. You're basically saying that an order which requires the appropriate authority to pay certain amounts very readily and easily ascertainable in a direct, in a specific amount of money by one or two steps by authorized government agencies is not a specific sum? Isn't that a distinction without a difference? You can have a dollar amount here and a very clear, often used, two-step process to determine the dollar amount here. Aren't you arguing a difference without a difference? I don't believe so, Your Honor. You can finish your answer. Thank you very much. I don't believe so, and the reasons are this. First, the purpose of the appropriations clause. I'm not getting to the appropriations clause. I'm talking about the definition of a specific, a certain sum. The designation of $50,000 versus under the CBA, this amount for this particular employee of the state equals $45,000. That's a distinction without a difference, isn't it? I disagree, and the reason, and I don't mean to call it a lack of appropriations clause, but it is relevant to my answer, and I'll be very brief with that. And that is the purpose of the appropriations clause is so that the public can see that the general assembly intended specific sums, specific money. Just incorporating this injunction, which does not set forth any of these sums explicitly, does not satisfy that. I understand Your Honor's point that, you know, you can derive this by a couple of steps to determine how much money is spent. And, in fact, we can derive how much money is spent as a result of this court order. That, however, does not mean that it meets the requirements of an appropriation or of the general assembly's non-deliberable duties to determine the amounts of the appropriation. Insofar as this court order requires sums to be spent, it is the court, the judiciary, that is overseeing how money is spent on employee pay. That it cannot do. Only the circuit court, I'm sorry, only the general assembly has the exclusive and non-deliberable power to do that. Thank you, counsel. I have one further question. Oh, I'm sorry. Go ahead. How would your argument impact the employees in the Attorney General's office? Not favorably. So you wouldn't be paid? I would not be paid. Well, I ask that because you waited almost a year to bring this appeal. So. And I'm wondering if you were preparing the case within that year or, you know, I know that Latches doesn't apply, but you did sit on your hands. How do you explain that? Sure. Absolutely, Your Honor. And as you recognize, Latches does not apply. And that, the point is that the people in the State of Illinois have brought this case. And there is a distinction between that and the Attorney General. But. Leaving that aside. Leaving that aside. That's a distinction without a difference. Yeah. I will be here in about 20 minutes. The Governor is going to come forward and tomorrow morning we're going to say he's gone. So there is like fighting lines to be drawn. But the. Different hands. The Supreme Court decision that was the basis of the people's motion in this case. The mandate by the Supreme Court. The Supreme Court mandate in that decision issued on June 27th of 2016. Three days late, the General Assembly and the Governor entered Public Act 99-0542. A partial budget. There was, therefore, it can be seen, momentum. That, hey, the impasse is breaking and the other branches of government are actually doing their constitutional job. And can't we also assume then that the legislature was aware of the case? The case law, obviously. The legislature was aware of the case law. You know, we always have to assume that that's true. Yes. But so, the point is then, three days later, after the Supreme Court decision was issued. There seemed to be momentum. A lot of that budget was designed to operate or provide appropriations for six months to December 31st. Now, there's still appropriations ongoing that have not been stopped. So it's still effective in many regards. But at the turn of the year, there was no new movement. At that point, three weeks later, we went into court. And so I do not think this is an example of sitting on one's hands. I think it's an example of trying to give the general assembly and the executive the opportunity to fulfill their role, to do what they were elected to do. And once it became apparent at the expiration of the partial budget that that wasn't happening, we went back into court. Certainly, it's not a preferred course of action. But looking at all the facts and the desire to hope that the constitutional government actually operated as it's intended to do, waited too long to see if that process would happen. It didn't. And so we came to court. Thank you. Thank you. Counsel? Thank you. May it please the court, my name is Stephen Jokic and I represent plaintiffs in this case. I have talked with our fellow athlete, Mr. Skorin, and he's graciously allocated all of the time that he would normally use to me. And I informed him reciprocally that in the next case, I don't have any need for time. And so we're all square in terms of the time in this case. I want to start by emphasizing the court's standard of review. You're reviewing a decision not going to solve a preliminary injunction. The standard is you have to find that the lower court views its discretion. And you give deference to the trial court. And you have to find that no reasonable person or that the trial court acted without the use of conscientious judgment. But with respect to the law, that's a no vote. That's right. That's right. And I'm going to go to the law in a second. But before I go to the law, I'd like to emphasize that when the Attorney General appealed the July 10th order, it came before this court. And this court went through the factors of what's necessary to justify a TRI. Fair chance of success on the merits, protectable right, irreparable harm, no adequate remedy of law, balance of equitance. And the court was very firm when it decided that, well, once the plaintiffs had shown a fair chance of success on the merits, that the rest of the case presented a compelling reason to overturn the TRI. And we quote that decision of the court on page 5 of our brief. Even today, I think there's, on those four factors, not the law. I'll get to the law in just a second. But on the most of the factors that deal with a holding order and relief, I think you have a compelling reason to say that those factors still okay. Yeah. I think it's pretty, we're pretty aware that there hasn't been changes in that regard. So it is more of a legal issue. So let's talk about the legal. One of the factors, of course, is likelihood of success on the merits. Yes. Right. Yes. Absolutely. So let's go to that. And the way that's accumulated is a fair chance of success on the merits. So what I'd like to talk about is three things. First of all, I'd like to talk a little bit about the statement of facts in State v. AFSCME. Then I'd like to talk about Judge Gilbride's dissent. And that, I think, leads you to an understanding of the concluding paragraphs of that decision, which I think argue in favor of allowing this case to proceed. In State v. AFSCME, what happened was you had the Great Recession. And the State of the Union negotiated additional agreements to cut the State's costs during the term of a contract. And what they negotiated was a deferral of raises, other terms, other changes to the terms and conditions of employment. Most importantly, they negotiated a no layoff, no facility closing agreement. And so the deal that was at issue in State AFSCME included both wages and a headcount. And once you had fixed both wages and headcount, you had dictated to the General Assembly how much they must appropriate in order to fulfill the contract. And that is the key, really, to what was at issue in State v. AFSCME. It was an agreement between the Executive and the Union that said, you have to spend this much money on personal services. And that was dictated by a plain arithmetic of the headcount of the various State agencies and the wages that they were supposed to be paid. Now, in the dissent in State v. AFSCME, Justice Kilbride brought up two cases that had been argued by the Union. One set of cases was a set of cases from other States and from the federal sector that say, well, even if the State can't pay for the obligation immediately, the legal obligation still remains. And there's a prominent U.S. Supreme Court case that's cited in the dissent that says that as a matter of federal law and federal appropriations statutes, you may not be able to pay today, but you still have the obligation to pay tomorrow. The other thing that was cited and that was discussed by Justice Kilbride is the Heaton case, which is the case that the Illinois Supreme Court decided in terms of the pension protection clause. And it's important to note that in the Heaton case, Justice Carminer had a very substantial discussion of what the impairment of contract clause meant as well. And if you think about Heaton, the pension case is eerily similar to what we're dealing with here, because why don't we have the money in the future to pay pensions? It's because the General Assembly has not appropriated the money on an ongoing basis to fund the retirement systems. And so it's very much a situation where the appropriations aren't there, but the obligation to pay in the future still is there. And in response to the citation of the Heaton case and its discussion about the impairment of contracts, and in response to the citation of the federal and other state authority that says the obligation still remains, the majority opinion in State v. AFSCME wrote the concluding paragraphs that Justice Chapman referred to that limit State v. AFSCME to agreements that are under Section 21 of the Illinois public-legal relationship. Because, after all, the most important portion of Section 21 is not the terms of the contract. It's the fact that the contract extends over different fiscal years, that it binds this General Assembly to appropriations in future years. The tolling agreements do not do that, because the tolling agreements extend the terms, conditions, and requirement, but they don't purport to bind the union to the governor for a period of time that is a multi-year period of time that is set in stone. And that is why when you sit down and you analyze State v. AFSCME, you cannot conclude that it forecloses the relief that the plaintiffs sought in this case. So, if we could boil this down to just the most simplest level. What you're saying is the Supreme Court had before it a case that was trying to tell the General Assembly what to pay, whereas your tolling agreements don't do that. Our tolling agreements, they don't have set wages set up, they don't have wages, and they're one page. And I think there's a copy attached to our brief. But they do relate back to the agreements that require certain pay raises and things like that, which the union wanted to continue. So, in essence, those existing contracts do have a set formula by which the amount is determined. That's what we were asking the people. They certainly do. They certainly do. And, you know, I think the point that your Honor made about how those monies are specific is a very good point in terms of the interpretation of Section 996. Because I think that the contracts authorize discrete amounts of money. In fact, in the next case you'll hear, you'll find out and you'll hear about how the Comptroller basically created a shadow budget. In the Comptroller's office to monitor the amounts of money that could be spent on various line items in the state budget that were required by this contract and by other contracts in the state. So do you believe that Section 996 was an effort by the General Assembly to act on the many cases that exist throughout Illinois without naming them all and attempting to do that? I think that it's wrong to assume that the General Assembly enacted a budget on June 30th that would have caused a state shutdown of services on July 1st. And that's what they're asking you to interpret 996 as. And if you look at the sequence of events, it's not so clear as the Attorney General makes it out to be. You know, one thing that the Supreme Court had already accepted the review of State v. AFSCME when the original motion for TRO was brought. The briefing was well underway. There was nothing to stop the Attorney General from trying to proceed to merits on the case in the period of time between July 2015 and March 2016. The Supreme Court decided State v. AFSCME on March 24th. Attorney General took no action. The union brought up a motion for reconsideration. That motion for reconsideration was denied on May 23rd. So that's almost a month before the budget for 2016 and 2017 was passed. Now, the mandate didn't issue, but you have to believe that having watched its first motion for reconsideration, the union was going to bring another motion for reconsideration. And there were three days between the time the mandate issued and the time that they passed this budget deal. And quite honestly, you know, the history is you publish together those budget deals in an instant. And no action was taken between July 1 of 2016 and January 26 of 2017. So, you know, our argument is a very simple argument. And it's really stronger argument now than it was in July of 2015. And it's that if your employer asks you to work and you work, you're entitled to pay. And if the employer then takes some action and undermines your ability to pay, that's in a permanent contract. And if you look at our plea deed in this case, we brought it under both the tolling agreements but also the portions of state law, the personnel code and the pay plan that set the wage rates. And that is why even if there's not a contract in place, that there's been an impairment of your contractual right to be paid if you perform services. When we brought the case in July of 2015, no one knew what was going to happen. No one knew whether people would continue to be required to work. No one knew what layoffs might occur. No one knew when a budget deal might be reached. Now we know that the executive officers of this state intend to require their employees to work. I mean, under the theory that is set out by the Attorney General, the Attorney General has been acting unconstitutionally since at least July, June, July 1 of 2016 because she has ordered her employees to work despite the fact that there's no appropriation for her office. And that means either A, their principle is way too broad to competence or B, that there are some exceptions to those principles that they put forward. And if there are some exceptions, I think that's a matter for them to argue before the trial court on remand as opposed to get a straight up-or-down ruling on whether state versus AFSCME applies to employment. Now... So in light of the Supreme Court case, what relief do you think this court should grant you? What relief do you think we should enter? Well, I... I heard you mention the word remand. That's what I'm asking. So I think that so long as people are asked to work, they're entitled to be paid. Now, the 2012-2015 contract, the successor to the one that was at issue in state versus AFSCME, didn't contain a no layoffs clause. It didn't contain a no facility closing clause. All right? And we have litigated layoffs since the tolling agreement was put into effect. And so I think that the key issue is whether state employers can correct people to work. Because I think if they say to people, you have to come to work or else you're fired, which is what we're talking about here, then you have an impairment in contract. Now, their argument is, well, the appropriations clause is everything. It trumps all other constitutional permissions. And I don't think that that's right. And I don't think it's right for a couple of reasons. One is, is that it clearly, if you read Heaton, it clearly doesn't trump somebody's right to get a pension. Because I think if you look at Justice Carmire's opinion in Heaton, he would have gone off either on impairment in contract or the pension protection clause. And I say second, you know, if you look at the authority that's cited in our brief, I think there are a number of exceptions to the rule that you need in appropriations to spend money. There's an old state Supreme Court case called Mantel v. Tuckwriter that talked about federal law. There's Jorgensen v. Voynich that talked about judicial salaries. And then there are two appellate court cases that talk about salaries for sheriffs and for county treasurers. One was a case from this case, from this court, the Wilson case that talked about sheriffs. And the other was the Hamer case from the court district that talked about county treasurers. And in the Hamer case, there's actually quite a bit of discussion where the court actually finds that the appropriations were insufficient, but nonetheless said that there was a cause of action to require that the money be spent. And so while I would certainly agree that, you know, the best result would be for the executive and for the legislature to agree on a budget for the expenditure of public funds, there are situations where the courts have stepped in both with respect to money and with respect to other situations where the political branches of government have gotten themselves into a lot of trouble. And we cite a bunch of those cases in our brief, too. The Rock v. Topsy case, the Brody case. And even if you look at the language of the court district from the last state shutdown case, Aspie v. Netsch, I think if the court district had been confronted with a state shutdown that had gone on for several weeks with people not being paid as opposed to just a potential for paychecks to lapse in the next week, which were the facts in Aspie v. Netsch, they would have come to a much different resolve. So... So the relief that you want in this case, going back to that, I haven't got the answer, is you just want us to affirm the district court and leave it at that. I think you have, yes, I think you should keep the injunction in place. And that's the narrow relief that you're seeking? I think the lower court did a good job of hearing all the evidence. Certainly there's nothing to prohibit the attorney general from seeking a final order that would be appealable. And that would be after the judge has heard every fact that he needs to hear in order to make a final order. Now, if I was my colleague at the attorney general's office, I'd get here and I'd get up and say, well, what more does the judge need to know? And I'd like to address that. I mean, I think, first of all, the court has indicated that you might want to know a little bit more about the contest between section 996. What did it mean in terms of whether it was just a blank check, as asserted by my colleague, or can you really attach specific numbers to the court decrees that are covered by section 996? You might also want to look at how section 996 was developed in terms of the legislative history. The other thing that you need to do, I think, And, you know, I always need to raise this, but as an advocate, I must. And if you were to decide, well, the lower court got it wrong in the law, it's got to go back to the lower court. There's a real issue here in terms of what it is central state services. Now, you know, I don't think that the theory that the Attorney General has put forward really has any, can be applied differently to the employees who work in the prisons than to employees who are put someplace that are, you know, part of the chain of command where they move paper from one level to another. Because I think under the theory that the Attorney General has put forward, which is you can't employ people unless you have an appropriation first. You can't make that contract. Then you can't make a contract with the correctional officer, but not with either. All right? But let's assume that we somehow get over that hurdle and we send this case back to the district court. But there's going to have to be a plan for which employees are essential and which are not. And that's because after almost two years of this budget dispute, you cannot assume that if the Attorney General is successful, that all of a sudden the legislature and the governor will come to an agreement. You have to assume that we could have a contracting government shutdown. And if you assume that we're going to have, that there's a real risk of a contracting government shutdown, then you have to decide, oh, what are we going to do about the people that are in prisons? What are we going to do about the people that are in developmentally disabled centers? What are we going to do about people that are temporarily committed and mentally ill? What will we do about our veterans at the veterans home? Where will they go if the doors are shut or if only some of the doors are shut? And that's really something that if you rule against me and send this back and say, prepare for a shutdown or be in the space where there's a shutdown, that ought to be fleshed out before the court. If there's any decree that says you can keep these functions going. I have a couple of quick questions, I hope. What about the union contracts that Mr. Legner pointed out that do have multi-year agreements in them? I think he mentioned like three or four. I think the employees that are covered by those contracts are also covered by the personnel code in the state pay plan. And so I think that they have a right to be timely paid so long as they're asking for it. So you're saying the Supreme Court case doesn't cover that? I would say that the Supreme Court case doesn't provide relief to those people on the basis of those state statutes. I have one other question. Do you think that the budget, the stopgap or temporary budget appropriates essentially payment for all state employees? Yes. And if we rule that way, I guess the preliminary, it's moved. 17 days, Your Honor, yes. Okay. That's the key answer to that question. So I have a follow-up that's okay if you just hold on. Sure, of course. So if this court decides that the injunction should be dissolved and, as you say, there's a government shutdown, then we have to look at essential employees. What exception gives the government the right to employ essential employees if we accept the Attorney General's argument that you can't pay without an appropriation? Quite honestly, if you accept their argument, I can't see an exception. And that's my point, is you talk about we have to talk about essential employees. What's the exception? I know that there are employees that might have to do certain things because of certain federal court orders, right? Okay. And there are some employees, I mean, the employees in the judicial branch, there's a continuing employee. But, for example, I think the legislators are included. And the legislature is small. Included in size. I'm sorry. I'm sorry. It was smart. But, you know, I have challenged both in the lower court and in our briefs in this court, as you know, what's the theory that allows us to keep the doors to the prisons open and not to employ everybody else? And I really think there's not a coherent theory that does that. And if there is one, then it's an exception to the broad principle that they're arguing. And we ought to go litigate that. We ought to articulate the exception. And we ought to go litigate that before the lower court or another meeting, before we dissolve the intervention. Thank you. Thank you. Thank you, Counsel. Counsel? Your Honor, starting with your last question about essential employees, there is absolutely a coherent theory that allows the determination of which government services are core services or alternative, like we do as essential employees, such that they may be required or performed and the obligations to pay employees performing those may be incurred. What is the exception? Where do I find it? Well. Where do I find an exception that says you can come to work but not be paid because there's no appropriation? In the way the federal government has construed its circumstances in the lack of a budget in light of its appropriations clause. In the way that the state of Minnesota made the essential services determination when they lacked a budget but also had appropriations clause. Okay. Well, first of all, Illinois has a very unique constitution. So you can talk to me about Minnesota and the federal government, but I haven't heard you explain it. What is there about either the statutes of the state of Illinois or the constitution that allows an executive officer to say you're essential and you have to come to work even though there's no appropriation for you to be paid? Sure. Absolutely, Your Honor. For the ones where there's truly no appropriations, there's no continual appropriations, for those there's a number of different theories that support it. Theories? Statutes? Constitution? Constitutional provisions. Okay, give them to me. There's a provision clause in the federal constitution. Of the federal constitution? Yes. Okay, what about that requires you to come to work if you're essential? It is illegal. It is a constitutional violation for the state of Illinois to engage in cruel or mutual punishment under the Eighth Amendment provisions. Therefore, we have to provide services and protect the people who are incarcerated in prisons. That is one example. And there's many such examples. It is what we're required to do that, but if we take your argument to its logical conclusion that no appropriation, you don't get paid, why would anybody come to work? If there's one. Why would anyone come to work if they know they're not going to be paid? I'm talking about the essential services enforcement. Well, I'm talking about essential services. Why would a prison guard come to work if they know they can't be paid? Because, as you argue, there's no appropriation. Why would anybody do that? Why would you come to work? Because I love my job. Oh, nice answer. We'll tell the Attorney General. Thank you. You can listen to it. It's a public record. You can listen to our website. But in those circumstances, for instance, Your Honor, things that are required by federal law, things that a state is required to do under federal law, via the Supremacy Clause, that trumps the Appropriations Clause in the Illinois Constitution. The Appropriations Clause is ineffective in those circumstances by virtue of the operation of the Supremacy Clause. So wouldn't we at least have to remand to make a determination as to what's essential and necessary? Oh, so, Your Honor, that depends on how you view this over this case. There is no – and the complaint, the complaint's very narrow, and it just says union members, not off-state employees, just union members suffering permanent contract without sufficient appropriation. It is not purported to be an essential services complaint. But it includes some 40,000-plus employees, some of which are prison guards. Absolutely. So now we do have to have – State troopers, for instance. Well, again, we're not going to have any state troopers. Yes, mental health workers. Now, some of those are covered by consent decrees, federal consent decrees that, again, are more federal-oriented by virtue of the Supremacy Clause, renders the requirements of the Illinois Constitutional Appropriations Clause, you know, to some degree, ineffective. And those are covered by the court county litigation. Yes, at some point, there will have to be an essential services determination. That is true. That is not presently before the court, though, because there's no complaint suggesting that. There's no complaint. The only complaint, the only theory of the complaint, is the impermeable contract. If they want to amend their complaint and make an essential services complaint, I can't stop them. You know, I'm looking to debate whether that's appropriate or not. But, again, that's not before the court. What's before the court is a very narrow issue, and that very narrow issue boils down to two things. One, Section 996 is not an appropriation because court decrees cannot be legislative appropriations. It has to be the setting aside of a specific sum for a certain purpose by the General Assembly. A court decree does not function as that. Some things get paid as a result of federal consent decrees, not because they are appropriations, but because the Supremacy Clause requires that those orders have or account for expenditure authority. Additionally, and finally, the TOEI agreement can continue the very same rights of the CBAs, of which there is no doubt they were subject to appropriation. It makes no sense as a matter of law to say that multi-year CBAs are subject to legislative appropriation, but when they expire, the executive of the union can do an end run around the General Assembly and enter into a decree that's not subject to appropriation. So I have one last question, and that is this. Is it the position of the Attorney General today that the Supreme Court case we've been discussing stands for the proposition that if there is no appropriation, then the employee does not get paid? Is that the simple sum of what you're arguing? I assert that it's not quite that easy in light of what I was discussing about the Supremacy Clause issue. Well, give me just a short line of what it is that you are arguing. Absolutely, Your Honor. The short line is the failure of the General Assembly to enact annual appropriations legislation cannot impair state contracts because those contracts are subject to appropriation. How is that different from what I said? How is that different from saying if there's no appropriation by the General Assembly, then the employee can't get paid? As a general matter, I will agree with that. Okay, that's all. Okay. I think we are done with the questions. We're done. For this one. For this one. Thanks very much. We appreciate the briefs and arguments of counsel. We'll take a five-minute break, and then we'll argue the next house suit case.